UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| Eastern Steel Constructors, Inc.<br><br>Plaintiff,<br><br>v.<br><br>International Fidelity Insurance Company,<br><br>Defendant. | Case No. ____________________<br><br>**COMPLAINT FOR DECLARATORY JUDGMENT** |

## COMPLAINT

COMES NOW Plaintiff, Eastern Steel Constructors, Inc. ("Eastern Steel"), a commercial subcontractor, by and through undersigned counsel to file this Complaint against Defendant International Fidelity Insurance Company ("IFIC"), the contract insurer, stating as follows:

## PARTIES

1. Plaintiff Eastern Steel is a corporation registered in the State of Maryland having its principal place of business at 2813 Belair Road, Fallston, MD 21047.

2. Defendant IFIC is a New Jersey Corporation having it principal place of business at 2570 Boulevard of Generals, Suite 125, Norristown, PA 19403.

3. This claim arises from an insurance company's breach of its obligations under a surety construction contract indemnity policy, i.e. payment bond to protect construction contract parties

contracted with its principal/actual contractor issued on a public works project for construction of a large complex of buildings for Pennsylvania State University at its University Park Campus in Centre County, Pennsylvania, hence in this District for purposes of venue.

4. Amounts due and owing from IFIC to Eastern are in excess of $497,354.24.

## JURISDICTION AND VENUE

5. The Court has subject matter jurisdiction over this cause of action based on complete diversity pursuant to 28 U.S.C. § 1332(a)(1) including the amount in controversy (greater than $75,000) and a federal question pursuant to 28 U.S. Code § 1331 (the Federal Arbitration Act, 9 U.S.C. §§1-14).

6. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b)2 based on the location of the project and events in Centre County, Pennsylvania giving rise to the cause of action.

## FACTS

7. The Pennsylvania State University ("PSU") is the owner of a complex of buildings, the Millennium Science Complex (the "Project"), which PSU arranged to have constructed at its University Park Campus in Centre County, Pennsylvania. PSU, with its construction manager, Whiting Turner, out of Baltimore, Maryland, entered into a construction contract with Ionadi Corporation ("Ionadi"), as a prime contractor for concrete construction, under which Ionadi agreed to provide certain labor, supervision, and materials for the Project.

8. On October 29, 2008, IFIC entered into a contract surety and bonding agreement with Ionadi, evidenced by issuance of an insurance policy in the form of a payment bond ("Payment Bond"), No. 0485863. The Payment Bond, an AIA Payment and performance surety agreement, identified IFIC as Surety, Ionadi as the Contractor and as Principal, and PSU as the Owner. A

true and correct copy of the surety Payment Bond is attached hereto as Exhibit "1" and incorporated by reference herein.

9. On November 11, 2008, Ionadi entered into an agreement ("the Agreement") with Eastern Steel, wherein Eastern Steel bid the handling of the reinforcing work and agreed to provide labor and trade hand tools for the installation of prefabricated reinforcing steel/rebar, mechanical connections, reinforcing for encased steel columns and slab wire mesh for the Project.  A true and correct photocopy of the Agreement is attached hereto as Exhibit "2".

10. On or about February 28, 2009, under the direction of Ionadi, Eastern Steel began the handling and installing of the prefabricated reinforcing steel supplied by Ionadi from its steel reinforcing supplier at the Project pursuant to the terms of the Agreement and project plans, specifications and risks, and Eastern Steel duly provided its work in accordance with the Agreement, with the last labor being supplied on the Project on September 4, 2010.  On a regular monthly basis, Eastern Steel submitted requests for payment to Ionadi, in the form of AIA Applications and Certification for Payment ("Applications").  Each Application contained an invoice number and identified the amount of the work performed within the covered time period, being allowed by IFIC's contract contractor the amount of retainage being withheld, and description of the weight of rebar and accessories as shipped and denoted on Ionadi' s delivery tickets.

11. Eastern Steel fully performed and met all its obligations and at-risk duties under the Agreement, and it reasonably believed that Ionadi would pay it for the services it provided at the Project.  Ionadi paid Eastern Steel in full for the first five Applications/invoices issued for work performed on the Project through June 30, 2009.  However, thereafter Ionadi either failed to pay

invoices at all, or only partially paid such invoices, and paid such invoices late rather than when they were due claiming only to Eastern it was having cash flow problems.

12. On May 5, 2010, as Ionadi had defaulted in its contractual obligations to pay Eastern Steel all sums due for its performance, Eastern Steel submitted its claim for all sums due to Ionadi's insurer and obligations of underlying contract obligor IFIC pursuant to the terms of the surety/Bond. Paragraph 6.1 of the Bond imposed on IFIC the obligation to send an answer to Eastern Steel within forty-five (45) days after IFIC's receipt of the claim, stating the amounts that were undisputed and the basis for challenging any amounts that were disputed. Despite this obligation, IFIC did not provide Eastern Steel, within this time period or thereafter, an answer stating the amounts that were undisputed and the basis for challenging any amounts that are disputed, and hence this litigation was initiated.

13. On November 29, 2010, Eastern Steel filed a demand for contract required arbitration against IFIC's principal, contractor obligor, Ionadi, with the American Arbitration Association (AAA). Eastern Steel duly proceeded per the AAA's rules, processes and binding effects thereto. An award (the "Award") in the amount of $433,489.42 was entered on November 9th, 2011, which was then confirmed and liquidated into judgment (the "Judgment") in Allegheny County, Pennsylvania. A true and correct copy of the Award is attached hereto as Exhibit 3. A true and correct copy of the Judgment is attached hereto as Exhibit 4.

14. IFIC had notice of the Arbitration since its inception and had the opportunity to participate in the construction contract Arbitration proceedings and the thereafter legal proceedings to confirm the Award to final Judgment. Despite IFIC's knowledge and its

opportunities to participate in the Arbitration and confirmation proceedings, IFIC chose not to object, appeal or do so.

15. Eastern notified IFIC in writing that the Award and Judgment were conclusive against it, and Eastern Steel demanded that IFIC pay Eastern Steel the amount of the Award and Judgment.

16. IFIC refused to pay Award and the Judgment, and Eastern Steel commenced an action against IFIC in the Court of Common Pleas of Centre County on August 1, 2011, by the filing of a writ of summons ("State Case") and subsequent complaint.

17. Throughout the course of the extensive State Case history, Plaintiff Eastern Steel has asserted that pursuant to controlling law, the Arbitration Award and Judgment were conclusive against IFIC, and that Eastern Steel has a direct right to enforce IFIC's obligations as the obligations co-obligor with Ionadi under the surety protection and pursuant to the Payment Bond. Furthermore, paragraph 23 of Eastern Steel's Contract with lonadi provides that "Subcontractor [Eastern Steel] shall be considered a direct obligee of contractors bond assuring this contract".

18. The previous presiding judge in the State Case, retired Judge Kistler, presided over the action against IFIC for failing to pay Eastern pursuant to the Payment Bond, and Judge Kistler ruled on two occasions that Eastern would be allowed to utilize the arbitration award as at least prima facie evidence against IFIC.

19. However, in an about-face, two days before trial was to commence, Judge Kistler ruled that the parties would be precluded from using the Award as evidence whatsoever.

20. Judge Kistler based his last-minute decision on three assertions: that there was

a "dearth of applicable case law" on this issue; that binding IFIC to the Award violated "fundamental tenets" of due process; and that Judge Kistler was unaware that IFIC "knows anything more about the arbitration than is contained in the [Award]."

21. Judge Kistler made these assertions: despite the fact that Eastern had provided the Court with a substantial number of cases, and most important, opinions issued by the Pennsylvania Supreme Court, supporting Eastern's position; despite substantial evidence proving that IFIC, having bonded with its principal's obligations, had notice of the Arbitration from the inception of the Arbitration proceedings, was invited to participate in the Arbitration, and refused to participate in the Arbitration for its own tactical purposes; and despite Eastern's presentation of overwhelming evidence of IFIC's detailed knowledge of the Arbitration proceedings, the AAA rules and binding authority, the Arbitration Award, and the conclusive liquidating Judgment.

22. After a mis-trial, the State Case proceeded, additional discovery occurred, and a slew of motions were filed before the Court in the Court of Common Pleas of Centre County, including Eastern Steel's Motions for Reconsideration of Judge Kistler's order above.

23. In Eastern Steel's most recent Motion for Reconsideration of Judge Kistler's order, Eastern Steel argued that in addition to the fact that its position was supported by state law, as the contract between Eastern and Ionadi affected interstate commerce, the Federal Arbitration Act (9 U.S.C. §§1-14) applies, and the body of caselaw relating to the binding effect of an arbitration award on a non-participating surety provider is particularly applicable in this case.

24. Eastern's Motion for Reconsideration (as well as other pretrial motions) were

denied and trial is now set for February 24, 2020.

25. It has been Eastern's position that under *both* state Supreme Court and federal controlling law, the commercial construction contract binding Arbitration Award is preclusive as against IFIC. IFIC has taken the opposite position. However, if IFIC is correct that the Award and Judgment has no preclusive effect on it under state law, then there is a clear conflict between the state law and the federal law set forward by Congress as to its importance toward commercial construction as to the effect of an arbitration award and judgment on a surety provider. If there is such a conflict, then the federal law supersedes the state law on this issue pursuant to principles of preemption.

26. Pursuant to the principles of conflict preemption, state law is nullified if there is a conflict between state and federal law. Pursuant to the law as recognized in the Third Circuit, a conflict may arise in two contexts. First, there may be conflict preemption where *compliance* with state and federal law is an impossibility. Furthermore, conflict preemption may also be found when state law stands as an obstacle to the accomplishments and execution of the full purposes and objectives of Congress.

27. In this case, if under state law the Award has no preclusive effect (as asserted by IFIC), and under federal law the Award has preclusive effect (as conclusively demonstrated by the extant case law in the Third Circuit), then federal law controls as it would be an impossibility to apply both state and federal views as to the preclusive effect of the Award.

28. Even more important, if under state law IFIC can re-open, moreover re-litigate Eastern's contract with IFIC's contractor principal and ignore the Award, that clearly would stand as an obstacle to accomplishment and objectives of the FAA, and the policy underlying public project

surety for the protection of subcontractors. Pursuant to the FAA, an arbitration award is unchallengeable except in the most extraordinary of circumstances.

29. The fact that an award under the FAA cannot be re-opened absent extraordinary circumstances is a concept that is consistent with the purposes of the FAA, including achieving speedy and inexpensive dispute resolution.

30. Permitting a jury trial to proceed on the construction contract underlying the Award and allowing IFIC to reopen the construction contract and forcing Eastern to re-try a case already concluded by the AAA Commercial Arbitration Award and Judgment, when IFIC at all times had notice of the proceedings and the opportunity to participate, undermines the very core purpose of the FAA and Congress' intent and will.

31. The determination of the issue of federal preemption and application of the FAA are within the purview and jurisdiction of this Honorable Court, and this Court's declaration is essential to finally determine the rights of the parties before a jury award violating the FAA is rendered in the state case.

**Count I**

**DECLARATORY JUDGMENT UNDER 28 U.S.C. §2201**

**THE AWARD AND JUDGMENT IS BINDING AND DETERMINATIVE AS TO IFIC'S LIABILITY**

32. The prior paragraphs of this Complaint are incorporated herein by reference as though set forth in full.

33. An actual controversy exists between Eastern Steel and IFIC.

34. A declaratory judgment will terminate the controversy giving rise to this action.

35. The issue of law is on undisputed facts and will operate as a summary proceeding herein.

36. Declaratory relief will be effective in settling the controversy.

37. This Court, we respectfully ask, should declare the Award and Judgment (exhibits 3 and 4) should be held to be binding and determinative as to IFIC's liability as a joint and several obligor to Eastern Steel.

**Count II**

**STAY OF STATE COURT PROCEEDINGS**

**28 U.S.C. §2283**

38. The prior paragraphs of this Complaint are incorporated herein by reference as though set forth in full.

39. It is undisputed that IFIC, having bonded with its principal's obligations, had notice of the Arbitration from the inception of the Arbitration proceedings, was invited to participate in the Arbitration, and refused to participate in the Arbitration for its own tactical purposes, and the Arbitration Award was entered, confirmed and liquidated into judgment.

40. It would be manifestly unfair and unjust for all evidence of the construction contract-based Award and conclusive Judgment against Ionadi to be excluded at the State Case trial of this matter when, as a matter of law, IFIC is bonded to the obligations of the principal, Ionadi.

41. To the extent necessary to effectuate the relief sought herein, this Court may grant an injunction to stay the State Court proceedings pursuant to 28 U.S.C. §2283 in order to effectuate the judgment and as may be authorized by Act of Congress.

**PRAYER FOR RELIEF**

**WHEREFORE,** Plaintiff demands judgment against International Fidelity Insurance Company and requests that the Court:

(a) declare the Award and Judgment (exhibits 3 and 4) is binding and

  determinative as to IFIC's liability as a joint and several obligors to Eastern Steel;

(b) award compensatory damages in the amount of: (i) all sums due and owing under or arising from the Contract; (ii) the reasonable attorney's fees and costs and other direct and indirect costs which Plaintiff has incurred or will incur in connection with enforcement of the Contract and the Payment Bond and the prosecution of this action and the State Case;

(c) award any and all consequential damages, including but not limited to loss of efficiency, loss of use of funds, and lost business opportunities;

(d) award interest due from the date of the Arbitrator's Award;

(e) award interest due from May 5, 2010 to present, on the amount of Eastern Steel's Claim in an amount equal to the prime rate of interest plus 3%;

(f) award prejudgment interest;

(g) award attorney's fees, expenses, and costs of suit;

(h) award punitive damages;

(i) award statutory attorney's fees, expenses, and costs of suit; and,

(j) grant such other relief as this Court deems just and proper, including but not limited to a stay of the State Case.

Respectfully submitted,

MCKAY & ASSOCIATES, P.C.

s/Kenneth P. McKay
Kenneth P. McKay
PA ID No. 73425

3755 Library Road

Pittsburgh, PA 15234
(412)344-6113
(412)344-6114 (fax)
ken@mckaylaw.com
Attorneys for Plaintiff